UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-CV-10040-RGS

WILLIAM McCAFFREY

v.

CAROLYN W. COLVIN

MEMORANDUM AND ORDER ON CROSS MOTIONS TO
AFFIRM OR REVERSE THE DECISION OF THE COMMISSIONER

October 18, 2013

STEARNS, D.J.

Appellant William McCaffrey seeks review of a final decision of the Commissioner of the Social Security Administration (SSA) affirming Administrative Law Judge (ALJ) Sean Teehan's determination that he is not disabled within the meaning of the Social Security Act (Act). In this appeal, McCaffrey argues: (1) that the ALJ "failed to address the conflicting testimony of Social Security's vocational experts," and (2) that vocational expert Kathleen Regan "misinterpreted what is a transferable skill and when [it is] relevant to another occupation." Pl.'s Mem. at 2.

McCaffrey applied for Disability Insurance Benefits on January 19, 2006, claiming disability as of January 1, 2005.[1] The SSA denied his application

---

[1] Carolyn W. Colvin became the Acting Commissioner of the SSA on February 14, 2013, and, pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. §

initially and again on reconsideration. After a hearing on October 31, 2007, the ALJ issued a written decision affirming the SSA's denial of benefits. On May 26, 2010, the Appeals Council vacated the ALJ's decision and remanded the case for a rehearing. On remand, the ALJ again found that McCaffrey was not disabled from January 1, 2005, the alleged onset date, through December 31, 2009, the last date of insurance. The Appeals Council denied further review on November 8, 2012. McCaffrey then appealed to this court pursuant to 42 U.S.C. § 405(g). The ALJ's decision will be affirmed.

BACKGROUND

McCaffrey was born on September 21, 1956. He was 49-years-old when he applied for Disability Insurance Benefits. In 1980, McCaffrey earned a bachelor's degree in marketing from the University of Massachusetts (Dartmouth). He then worked for twelve years as a fabricator, assembling and stacking the components of prefabricated tool sheds. He also supervised two junior employees. McCaffrey left his job as a fabricator in 1992, after receiving a contractor's license. He then worked in the construction trades as a laborer. In July of 2003, McCaffrey suffered neck, shoulder, hip, and leg injuries in a truck accident. He has not worked since.

---

405(g), is substituted by the court as the proper defendant in this suit.

McCaffrey lives by himself on the first floor of a two-story house in Uxbridge, Massachusetts. He cleans, shops for groceries, and prepares his own meals. He occasionally takes day trips to Brookfield, Massachusetts, where he owns a small camp house. He has a driver's license and is able to drive for up to half an hour at a time. He enjoys hunting, although he avoids inclines when pursuing game. He is licensed to carry firearms.

McCaffrey's work history was the subject of the testimony of two vocational experts (VE), Robert Laskey, who testified at the 2007 hearing, and Kathleen Regan, who testified in 2011. They differed over the transferability of McCaffrey's vocational skills. In Laskey's view, these were negligible as McCaffrey's prior work as a fabricator and as a construction laborer had entailed only semi-skilled or unskilled labor. Regan, on the other hand, analogizing McCaffrey's construction work to that of a carpenter, and considering his experience as a fabricator and his degree in marketing, assessed his transferable skills to include basic math and computation skills, cost estimation, planning, materials handling, hand tool operation, customer service, blueprint reading, and purchasing. Both VEs identified available jobs that McCaffrey could perform in the national economy consistent with his residual functional capacity (RFC). In Laskey's opinion, these included sales clerk, parking lot cashier, and finish inspector. Regan testified that McCaffrey

was capable of working as a cost estimator for construction projects, a sales representative for signs and displays, a wholesale construction kit manufacturer's representative, and as a sales agent for business services in the construction trades.

**The ALJ's Decision**

In his May 27, 2011 decision, the ALJ first determined that McCaffrey was last insured on December 31, 2009. The ALJ then applied the familiar five-step sequential analysis.[2] At Step One, the ALJ found that McCaffrey had not engaged in substantial gainful activity since January 1, 2005. At Step Two, he found that McCaffrey suffered severe impairments including cervical myofascial pain, degenerative disease of the left and right shoulders, carpal tunnel syndrome, a

---

[2] SSA regulations at 20 C.F.R. § 404.1520(a) establish a five-step protocol that an ALJ is required to follow in determining whether an individual is disabled within the meaning of the Social Security Act. The ALJ must first determine whether a claimant is currently engaged in substantial gainful activity. Next, the ALJ must determine whether the claimant suffers from a severe impairment that limits his ability to work. If the impairment is the same as, or equal in its effect to, an impairment (or combination of impairments) listed in Appendix 1 of Subpart P of the regulations, the claimant is presumptively deemed disabled. If the impairment is not covered by Appendix 1, the fourth step of the analysis requires the claimant to prove that his disability is sufficiently serious to preclude a return to his former occupation. *See Goodermote v. Sec'y of Health and Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1983). At the fifth step, the burden shifts to the ALJ to show that there are jobs in the national economy that the claimant is nonetheless able to perform.

torn left hip ligament, a right knee torn medical meniscus, and a right ankle cyst. At Step Three, he found that McCaffrey's impairments did not singly or in combination meet or equal an impairment listed in Appendix 1. *See* 20 C.F.R. §§ 416.920(d); 416.925; 416.926. He also found that McCaffrey retained the RFC to perform light work as defined in 20 § C.F.R. 404.1567(b).[3] In making this finding, the ALJ gave significant weight to the opinions of two independent medical examiners, Dr. Gerald Winkler, a neurologist, and Dr. John R. Ruggiano, a psychiatrist.

At Step Four, the ALJ determined that McCaffrey was unable to perform any of his past relevant work. At Step Five, he concluded from a consideration of McCaffrey's age, education, work experience, and RFC that he had acquired skills from his past relevant work that were transferable to other jobs in the national economy, specifically those that had been identified by VE Regan.

## DISCUSSION

---

[3] More specifically, he found that McCaffrey could lift and carry 20 pounds occasionally and 10 pounds frequently, sit or stand for six hours during an eight-hour workday, and walk for two to four hours. He also found that McCaffrey could occasionally climb stairs and ramps (but not ladders, ropes or scaffolds), push and pull with his upper extremities, balance, stoop, and crawl (but not crouch or kneel), reach vertically (if not required to carry anything over his head), and on a more frequent basis reach horizontally and perform gross and fine hand manipulations. On a less positive note, the ALJ concluded that McCaffrey needed to avoid concentrated exposure to unprotected heights, and moving and dangerous machinery.

In the Social Security context, judicial review is limited to a determination of whether the findings of the Commissioner are supported by substantial evidence.[4] *See* 42 U.S.C. § 405(g). The test is whether "a reasonable mind, reviewing the evidence in the record as a whole, could accept [the Commissioner's findings] as adequate to support his conclusion." *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). However, his or her findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

McCaffrey's first claim is that the ALJ erred in failing to explain why he discounted Laskey's testimony in favor of Regan's with respect to "the classification of [his] past relevant work or the transferability of [his] skills to other potential employment positions." Pl.'s Mem. at 11. In support, McCaffrey relies on *Nguyen,* a Social Security case in which the First Circuit held that an ALJ improperly rejected the "uncontroverted" opinion of a claimant's treating

---

[4] The Commissioner's findings are conclusive if they are supported by substantial evidence. *Manso-Pizarro v. Sec'y of Health and Human Services.*, 76 F.3d 15, 16 (1st Cir. 1996). "Substantial evidence . . . means evidence reasonably sufficient to support a conclusion. Sufficiency, of course, does not disappear merely by reason of contradictory evidence . . . . [The] question [is] not which side [the court] believe[s] is right, but whether [the ALJ] had substantial evidentiary grounds for a reasonable decision . . . ." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998).

neurologist, while substituting his own assessment of the raw medical data (which the Court found to be beyond the ALJ's lay competence). *Nguyen*, 172 F.3d 31 at 35. The *Nguyen* case is, of course, easily distinguishable. Here, the evaluation of the conflicting opinions of the two VEs, amplified as they were at separate hearings, lies well within the competence of a lay person to evaluate. In preferring the opinion of Regan to that of Laskey, the ALJ committed no reversible error. To the contrary, the ALJ was simply doing his job, which is to weigh credibility, resolve conflicting evidence, and draw inferences from the evidence in the record. *See Rodriguez.*, 647 F.2d at 222; *see also Pires v. Astrue*, 553 F. Supp. 2d 15, 21 (D. Mass. 2008) ("[R]esolution of conflicts in the evidence or questions of credibility is outside the court's purview, and thus where the record supports more than one outcome, the ALJ's view prevails as long as it is supported by substantial evidence.").

In his second claim on appeal, McCaffrey contends that VE Regan (and by extension, the ALJ) erred in concluding that McCaffrey had acquired transferrable skills during his prior work life. In determining at Step Five whether McCaffrey was disabled, the ALJ applied the Medical-Vocational Guidelines (Grids) Rule 202.15. The Rule directs a finding of not disabled when

a claimant's skills are transferable.[5] Consequently, a crucial issue is whether Regan was correct in her assessment that McCaffrey indeed possessed portable skills.[6] It will be recalled that Regan considered that the skills McCaffrey had acquired as a construction laborer and contractor, supplemented by his college education, were akin to those of a skilled carpenter. While not altogether rejecting the analogy, McCaffrey contends that some of the carpentry skills identified by Regan are "either not skills, were skills which he never obtained[,] or were not transferable." Pl.'s Mem. at 12.

In the first instance, McCaffrey contends that basic math and computational abilities (which he does not deny possessing) are not skills that

---

[5] While the First Circuit has cautioned against the mechanical application of the Grids where both exertional and nonexertional limitations are alleged, *see Da Rosa v. Sec'y of HHS*, 803 F.2d 24, 26 (1st Cir. 1986), the Commissioner may rely on the Grids if "nonexertional limitation impose[s] no significant restriction on the range of work a claimant is exertionally able to perform." *Ortiz v. Sec'y of HHS*, 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Here, McCaffrey's claimed impairment was not so severe so as to impede his ability to perform light work, which permits the ALJ's use of the Grids. Additionally, the ALJ properly elicited the testimony of a VE to supplement the use of the Grids, which is encouraged by case law. *See Nguyen*, 172 F.3d at 36.

[6] In *Albors v. Sec'y of Health & Human Servs.*, 817 F.2d 146 (1st Cir. 1986) (per curiam), Albors challenged the denial of his social security disability claim by contending that the vocational expert and the ALJ erred in concluding that he had transferable skills. *Id.* at 147. The ALJ applied Medical-Vocational Rule 201.07, which directs a finding of not disabled when a claimant's skills are transferable. *Id.* The First Circuit consequently considered whether or not Albors had transferable skills to be a "critical issue." *Id.*

confer a special advantage over less tutored persons in the workforce. Pl.'s Mem. at 13. The court disagrees. Social Security Ruling 82-41(2)(a) defines a skill as follows:

> A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of the occupation which is above the unskilled level (required more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

Although basic math and computation might be considered rudimentary skills, the regulations (properly) deem an individual who has acquired basic "arithmetic" skills from at least a high school education or above to be capable of performing semi-skilled and skilled work. High school education and above "means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work." 20 C.F.R. § 404.1564(b)(4).

McCaffrey next claims that there is no evidence in the record that he ever acquired the skills of planning, cost estimation, purchasing materials, or customer service in his work as a carpenter and that Regan's conclusion to the

contrary "is conjecture on the part of the vocational expert without any support." Pl.'s Mem. at 13. The court disagrees. In *Acre Crespo v. Sec'y of Health and Human Servs.*, 831 F.2d 1 (1st Cir. 1987), the First Circuit held that the ALJ

> "may rely on general job categories in the *Supplement to the Dictionary of Occupational Titles* [*DOT*] as presumptively applicable to a claimant's prior work. . . . [T]he claimant could overcome the presumption that the Secretary's generalization applies by demonstrating that her duties were not those envisioned by the framers of the categories listed in the publication."

*Id.* at 5, quoting *Gray v. Heckler*, 730 F.2d 392, 372 (1st Cir. 1985). The burden, in other words, was on McCaffrey to rebut the *DOT* presumption, a burden that he failed utterly to discharge in the hearings before the ALJ.

Finally, McCaffrey contends that the occupations identified by Regan as available to him in the national economy – cost estimator, sales representative, wholesale manufacturer's representative, and sales agent for construction business services – have no relation to his past work because they would require a significant change in his work conditions. McCaffrey maintains that he has no past relevant work in an office or salesroom environment and cannot be expected to transition to a "more complex position." Pl.'s Mem. at 14. The argument misconstrues what the Social Security regulations mean by transferability of skills.

> (2) How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs in

>
> which –
>
> (i) The same or lesser degree of skill is required;
> (ii) The same or similar tools and machines are used; and
> (iii) The same or similar raw materials, products, processes, or services are involved.
>
> (3) Degree of transferability. There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. *A complete similarity of all three factors is not necessary for transferability.* However, when skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs, and work settings, we consider that they are not transferable.

20 C.F.R. § 404.1568(d) (emphasis added).

It takes no great leap of the imagination to extrapolate the everyday skills of a carpenter in estimating costs and purchasing work materials into those of a cost estimator in the construction industry, or given that McCaffrey has a degree in marketing, those of a sales agent for business services in the construction trades. Similarly, given McCaffrey's experience in fabricating parts for prefabricated tool sheds, one can easily envision him assembling signs and displays as a sales representative or acting as a wholesale manufacturer's agent in promoting similar products requiring assembly.[7] In sum, the ALJ committed

---

[7] In passing, McCaffrey argues that "'[g]enerally, where job skills are unique to a specific work process in a particular industry, or work setting, e.g., carpenter in the construction industry, skills will not be found to be transferable without the need for more than a minimal vocational adjustment by way of tools, work processes, work settings, or industry.'" Pl.'s Mem. at 13,

no error in relying on VE Regan's testimony and her assessment of McCaffrey's skills and their transferability.

ORDER

Because the ALJ's decision that McCaffrey is not disabled within the meaning of the Social Security Act is supported by substantial evidence, his motion to reverse the decision of the Commissioner is <u>DENIED</u>. The Commissioner's cross-motion for an affirmance is <u>ALLOWED</u>. The Clerk will enter judgment accordingly and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

quoting SSR 82-41(4)(c). This provision of the regulations, however, specifically applies to individuals who are "advanced age (*55 or over*)" (emphasis added) when age significantly affects an individual's ability to "make a vocational adjustment to substantial changes in work simply because skilled or semiskilled jobs can be identified which have some degree of skill similarity with their [past relevant work]." *Id*. McCaffrey was 53 years old on the date he last held insured status under the Act. Thus, the regulation is inapplicable in McCaffrey's case.